### STEVENS vs. WILSON.*

Upon a bill filed to compel a transfer of two hundred shares of stock, purchased by the defendant, with money advanced by the complainant upon the following order, viz., "Please pay to order of D. M. W. $5000, for which he will give you a receipt, to be paid in stock of the Newark Plank Road Co., say two hundred shares, or money return in same proportion, at that rate, $25 per share;" *held,* that the meaning of the contract was, that if the defendant could not, or did not buy the stock at par, he should return the money; that when he purchased the stock with complainant's money, he held it as trustee for complainant; and that he must transfer the stock to the complainant, and account for all the dividends, with interest.

The cause was argued upon the bill and answer.

*Mr. T. Runyon,* for complainant.

*Mr. Keasbey,* for defendant.

THE CHANCELLOR.

The defendant, in April, 1860, was president, and a director of the Newark Plank Road Company, and held some of its stock. The New Jersey Railroad Company were buying up stock of this company for the purpose of obtaining the control of it; the defendant was interested in keeping the majority of the stock and the control of the company out of their hands. He applied to the complainant, who, on account of his interest in a rival scheme, wished to keep the plank road out of the control of the railroad company, to aid him in buying up and holding the stock. The complainant did not desire the plank road stock as an investment, but was desirous to aid the defendant in accomplishing his design of keeping the control out of the hands of the New Jersey Railroad Company, and agreed to advance $5000 for that purpose. The money was advanced on the twenty-eighth

---

* CITED *in Cutting* v. *Dana,* 10 C. E. Gr. 270.

of April, 1860, by an order given by Stevens upon his agent, W. W. Shippen. This order and the receipt of Wilson annexed, the defendant in his answer says, contain the terms on which the money was advanced, and the mode in which it was to be disposed of. The order and receipt, as set forth in the answer, are as follows:

"HOBOKEN, April 28th, 1860.

W. W. SHIPPEN, ESQ., Sir:—Please pay to order D. M. Wilson $5000, for which he will give you a receipt, to be paid in stock of the Newark Plank Road Co., say two hundred shares, or money return in same proportion, at that rate, $25 per share.

E. A. STEVENS."

" Received, Hoboken, April 28th, 1860, $5000, as per stipulation within, to be transferred to order or request of Mr. Stevens, when he shall desire.

D. M. WILSON."

The defendant, upon receiving the money, purchased with it two hundred shares of the stock of the plank road company, which he caused to be transferred to himself, and still holds, having since received all the dividends thereon, commencing with the dividend of July first, 1860.

About two years after the purchase, the complainant requested the defendant to transfer the stock to him. Wilson declined to do this, saying that he supposed Mr. Stevens never intended to ask him for the stock, or the money; and afterwards, the complainant, by a written notice, required the transfer, and upon refusal, filed his bill in this case to compel the transfer.

The defendant contends that, by the terms of the contract in the papers, and by the understanding between him and complainant, he was, at his option, to return either the stock, or the money with the interest, and offers to pay the money, with the interest.

The question is upon the meaning of the contract, as contained in the writings. Whether this is such a contract as will merge in the writings all the verbal understanding and conversation at and before the making of it, need not be considered here, for the answer says it contains the terms of the agreement, and although it states what was their understanding of the contract, it does not state any conversation or verbal agreement in which that understanding was embodied; so we can only infer that such understanding means the interpretation of the agreement.

The order is in the curt, elliptical form, used by business men, and is not entirely free from ambiguity, and must be interpreted by the circumstances under which it was given.

The complainant did not desire to own or hold plank road stock, but did desire to aid the defendant in retaining the control of the road, and was willing to advance the money and risk it in stock at par, and to stand the loss if it depreciated; he was not willing, or, at least, did not agree to pay, over par.

The defendant wanted the aid of the complainant in precisely that way; he wanted Stevens to aid in controlling the direction of the road, by advancing money to buy stock, at his own risk. He did not want a loan of money to enable himself to buy stock, at his risk. He, for aught that appears, was a capitalist, able to buy without borrowing, or to borrow of the banks. He appealed to Stevens' spirit of rivalry to the New Jersey road, and not to his own credit. Nor was his object to make personal gain by having the stock in such position that he should have the advantage of the rise, and Stevens run the risk of depreciation. He did not, and, from the circumstances, it is plain that he would not make such a proposition; it would have defeated his object.

Under these circumstances, and the additional fact, which must be taken for granted, that it was possible that he might not be able to purchase the shares at the price limited, this money was advanced. And, under such circumstances, although the complainant possibly might agree that

the defendant should buy the shares, and return them or the money to him, at his option, after he ascertained which would be most profitable for himself, an agreement so inequitable will not be inferred from doubtful terms; it must clearly appear.

The terms of the receipt are to pay in stock, or return the money; the expression "or money return," can mean nothing else; it is not *to repay* in money, but *to return* the money, and of this, the natural meaning would be, that he should return the same money, not the same identical coin or bills, but the money without having used it; this is strengthened by the fact that interest is not mentioned. If it was meant that he should hold the stock two or five years, and then at his option, transfer the stock or repay the money, it would have been with interest.

The contract means that if he could not, or did not buy the stock at par, he should return the money; one of these was to be done. When he purchased the stock with Stevens' money, according to the rule of equity, he held that stock as trustee for Stevens, and nothing but a clear, positive agreement by Stevens, will enable him to speculate on the trust property for his own benefit, and at his option, to appropriate the profits, and put the risks upon his *cestui que trust*.

The terms of the receipt, "to be transferred to the order of Mr. Stevens *when* he shall desire," show plainly that it was intended that the stock itself, if well purchased, should be held for him, and transferred when he requested. He did not wish to appear as the owner of the stock; he had a reason for having it in the name of another, but by this he secured the right of having it transferred to any other person than the defendant, at his option.

The defendant must transfer to the complainant these two hundred shares of stock, and account for all the dividends received upon them, with interest.